UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Michael D. Rix

v.                                    Civil No. 05-cv-354-JD

Fredrick Serna, et al.

**REPORT AND RECOMMENDATION**

Michael Rix has filed suit pursuant to 42 U.S.C. § 1983,[1] alleging that the defendants have violated his Fourteenth Amendment due process rights and his Eighth Amendment right not to be subjected to cruel and unusual punishment, and related claims under state law.  Because Rix filed this action as a prisoner proceeding *pro se* and *in forma pauperis*, the matter is

_____

[1]Rix titles his original complaint (document no. 1) "Petition for Writ of Habeas Corpus Petition in Equity" and his amended complaint (document no. 5) "Amended petition in Equity." I find, however, that Rix has alleged a violation of his federal constitutional rights by state actors, and that his claim is therefore a civil rights action under 42 U.S.C. § 1983, which creates a cause of action against those who, acting under color of state law, deprive individuals of "any rights, privileges or immunities secured by the Constitution and laws" of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  I will consider both his original and amended petitions, in the aggregate, to be the complaint in this matter.

before me for preliminary review to determine whether the
complaint states a claim upon which relief might be granted.  See
28 U.S.C. § 1915A; United States District Court for the District
of New Hampshire Local Rule ("LR") 4.3(d)(2).

Standard of Review

Under this Court's local rules, when an incarcerated
plaintiff commences an action *pro se* and *in forma pauperis*, the
magistrate judge is directed to conduct a preliminary review and
to prepare a report and recommendation advising the district
judge whether the complaint or any portion thereof should be
dismissed because:

> (i) the allegation of poverty is untrue, the action
> is frivolous, malicious, or fails to state a claim
> upon which relief may be granted, or seeks monetary
> relief from a defendant who is immune from such
> relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter
> jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court
construes *pro se* pleadings liberally.  See Ayala Serrano v.
Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following
Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe *pro se*
pleadings liberally in favor of the *pro se* party).  "The policy
behind affording *pro se* plaintiffs liberal interpretation is that

2

if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>, <u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). Application of this standard ensures that *pro se* pleadings are given fair and meaningful consideration.  <u>See Eveland v. Dir. of C.I.A.</u>, 843 F.2d 46, 49 (1st Cir. 1988).

<u>Background</u>

Michael Rix was incarcerated at the Strafford County House of Corrections ("SCHC") in March of 2005.  Rix was held at the SCHC pending trial until he was sentenced on June 6, 2005.  Rix was released from the SCHC on November 2, 2005.[2]

---

[2]Rix has requested injunctive as well as monetary relief in this action.  Because Rix has now been released from the SCHC I find that his claims for injunctive relief are moot and I will not consider them further.

1.   <u>Claims Related to Due Process in SCHC Disciplinary Hearing</u>

     During his incarceration at the SCHC, Rix alleges that he
was falsely accused of committing a disciplinary infraction by
corrections officer Paul Giampa.  Rix alleges that the hearings
officer, Fredrick Serna, was aware that the charges were false
but found Rix guilty of the infraction anyway.  In preparing for
the hearing, Rix twice requested copies of Giampa's statements
against him, but was denied access to the statements.  Rix
alleges that he was unable to adequately prepare to defend
himself against the disciplinary charges because he was denied
access to the statements of his accuser.  Rix was found guilty of
the infraction and was sanctioned with ten days in segregation.
The sanction was suspended.

     Rix alleges that prior to the disciplinary hearing, his SCHC
employment was terminated and his trustee status was revoked as a
result of the disciplinary charges.  Neither his job nor his pre-
hearing security status was restored.  Further, Rix alleges that
he was denied reassignment to any ohter facility position
requiring a lower classification status.  Rix alleges damages
resulting from the loss of his lower security rating and loss of
employment and wages.

2.    <u>Claims Related to Medical Care</u>

    A.    <u>Medical Diet</u>

Rix alleges that he suffers from severe diabetes mellitus.[3] As a result, Rix requires a special diabetes-specific diet.  Rix alleges that he was denied all special meal requests by SCHC officials, despite the fact that they were aware of his need for a medically appropriate diet.  Instead, Rix alleges that he was provided with a "modified carbohydrate" meal that was inappropriate for his medical condition.

    B.    <u>Administration of Insulin</u>

Rix alleges that the medical care provider employed by the SCHC mixed two types of insulin together which caused Rix's blood sugar to rapidly deplete.  The incorrect administration of

---

[3]"Diabetes mellitus" is described as a chronic syndrome of impaired carbohydrate, protein, and fat metabolism owing to insufficient secretion of insulin or to target tissue insulin resistance.  It occurs in two major forms: insulin-dependent diabetes mellitus (type I) and non-insulin-dependent diabetes mellitus (type II), which differ in etiology, pathology, genetics, age of onset, and treatment.  Type I diabetes tends to a higher incidence of microangiopathy (affecting the retinas, kidneys, and basement membrane of arterioles throughout the body) than type II; type II diabetes is classically accompanied by macroangiopathy, leading to premature atherosclerosis (myocardial infarction) and cerebrovascular accident.  Both types are associated with disease of small and large blood vessels. <u>Dorland's Illustrated Medical Dictionary</u> (28th ed. 1994) at 457.

medication caused Rix to suffer temporary blindness, and almost caused him to become comatose or die.

    C.   <u>Toenail Care</u>

Rix claims that diabetics cannot manicure their own feet at the SCHC because of the risk of infection involved.  As a result, the SCHC medical staff are responsible for seeing to Rix's toenail cutting.  Rix alleges that the SCHC staff failed to cut his toenails for an extended period of time, resulting in Rix having to walk in a great deal of pain for a two-month period because his toenails had grown under his toes.  Rix's repeated complaints of pain resulting from the length of his toenails were ignored by medical staff, even though the SCHC doctor had ordered his toenails to be cut.  Eventually, Rix was sent to a podiatrist to deal with the foot problems that resulted from the SCHC medical staff's inattention.

    D.   <u>Cyst</u>

During Rix's first several months at the SCHC, Rix and other inmates developed unexplained cysts.  Rix developed a large cyst on his face that became painful and infected.  Rix was eventually sent to Wentworth-Douglas Hospital in Dover, New Hampshire where he required surgery to treat the cyst.

After surgery, Rix was returned to the SCHC with instructions for the care of his surgical wound, including proper maintenance of a drainage wick that had been left in Rix's face. The SCHC nurse was examining Rix's wound and, against the directions of the post-surgical instructions, pulled the wick in such a way that the knot holding it in place then had to be removed, which caused the wick itself to retreat into the wound. Instead of being immediately removed, the wick was allowed to remain in the wound, which healed over it.  The SCHC doctor attempted to reopen the wound and retrieve the wick with a pair of tweezers and without anesthesia but was unsuccessful. Eventually, the doctor at SCHC recommended that Rix undergo further surgery to remove the wick.  The SCHC never took any action on the recommendation, however, and Rix did not receive further surgery.

Several months later, the wound became infected.  The SCHC medical staff placed Rix on a course of antibiotics which was unsuccessful.  The infection increased and spread.  The wound in Rix's face burst prior to his scheduled surgical consult.  The SCHC nurse attempetd to treat the wound by squeezing it painfully, which was not only ineffective, it caused the area to

7

swell so badly that surgery had to be postponed.  At the time of
his filing, Rix stated that the wick was still in his face and
remained an infection risk.

Discussion

1.   <u>Due Process Claims Relating to Disciplinary Process</u>

The Fourteenth Amendment guarantees that no State shall
"deprive any person of life, liberty, or property, without due
process of law."  U.S. Const. amend. XIV.  In order to assert a
Fourteenth Amendment due process claim, the plaintiff must allege
that he was deprived of a liberty interest protected by the
Constitution or by state law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539,
556 (1974) (citing <u>Haines v. Kerner</u>, 404 U.S. 519 (1972);
<u>Dominique v. Weld</u>, 73 F.3d 1156, 1158 (1st Cir. 1996).  In order
to state a due process violation in the context of a disciplinary
hearing, therefore, a prisoner must identify a liberty interest
of which he was deprived.  <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472,
483-84 (1995).  Such a liberty interest is, generally, "freedom
from restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due
Process Clause of it's own force, nonetheless imposes atypical
and significant hardship on the inmate in relation to the

8

ordinary incidents of prison life." <u>Id.</u> at 484 (internal citations omitted).

Here, Rix was serving a sentence in the SCHC when he was charged with a disciplinary infraction.  Rix takes issue with his inability to defend himself against the charge against him as a result of being denied access to statements made against him in prehearing discovery.

After his hearing, Rix alleges that he was officially sanctioned with ten days of suspended time in the punitive segregation unit.  Rix has not alleged that he ever had to serve time in punitive segregation as a result of these charges, or that any sanctions were imposed that were so severe that they were not a typical and reasonably foreseen part of prison life. Accordingly, I find that Rix has not alleged a liberty interest of which he was deprived.  I must therefore find that Rix has not alleged a due process violation for the loss of his job, and I recommend that this claim be dismissed.

Rix also alleges that he was unofficially punished for his disciplinary infraction with a loss of trustee status, a change in security status and a loss of his SCHC job and the wages he would have earned at that job.  To the extent Rix alleges that

his due process rights were violated by the loss of his prison job, "it is clear that unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs." Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986).  Rix therefore lacks any federal due process claim with respect to not being allowed to have a job in the SCHC.

    An inmate has no liberty interest in being housed or classified in a particular facility or in a particular security status.  Meachum v. Fano, 427 U.S. 215, 225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976) (discussing that the holding in Meachum dictates that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").  "[A]n increase in burdensome conditions does not in itself implicate the due process clause." Sisbarro v. Warden, Mass. State Penitentiary, 592 F.2d 1, 3 (1st Cir. 1979) (citing Meachum, 427 U.S. at 224–25).  Here, Rix does not allege facts sufficient to state a constitutional violation for security

status changes within the SCHC or the addition of burdensome conditions of confinement occasioned by those changes. Therefore, I recommend that Rix's due process claims relating to his changed security status be dismissed.

Rix has named the following defendants to the due process claims alleged: Serna, Giampa, SCHC Superintendent Warren Dowaliby and SCHC Deputy Superintendent Jeffrey McPhearson. Because I recommend that the due process claims be dismissed on the basis that Rix has not stated a due process claim upon which relief might be granted, I recommend the dismissal of these defendants from this action as well.

2.   Medical Care Claims

The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.[4]   See Farmer v. Brennan, 511 U.S. 825, 831 (1994).

---

[4]Because Rix was a pretrial detainee for the first several months he was housed at the SCHC, the SCHC's constitutional obligation to provide him with adequate medical care during that time flows from the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's prohibition against cruel and unusual punishment.  Bell v. Wolfish, 441 U.S. 520, 555 (1979). Because the Fourteenth Amendment is at least as demanding as the Eighth Amendment in this context, I find that any claim stated under the Eighth Amendment is also stated under the Fourteenth Amendment for events that occurred during the period before Rix was sentenced.

To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff has a serious medical need for which adequate care has not been provided.  Farmer, 511 U.S. at 831; Rhodes v. Chapman, 452 U.S. 337 (1981); Estelle, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  Estelle, 429 U.S. at 106.  A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835–47); see also Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991) (defining a serious medical need as one "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for at is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'").

"Adequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable

when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.  United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care."  Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Rix has alleged that he has a serious medical condition, diabetes mellitus, and that the SCHC officials were aware of his condition and his need for treatment.  He has alleged that, in fact, he received some treatment, but that his medical care was in many ways inadequate to meet his needs.  Rix specifically alleges that the SCHC medical staff were aware of his need for an appropriate diet, because they did give him a special diet but

not one that was appropriate to his condition, that they were aware of his need for insulin because he was provided insulin that was administered improperly, that they were aware of his need for foot hygiene because it was ordered by an SCHC physician, and aware of his need for cyst treatment, because some treatment was provided.  Rix alleges, however, that he was denied adequate medical care in four ways: he was denied a medically appropriate diet, denied appropriately administered insulin to treat his diabetes, denied adequate foot care, and denied adequate care of a post-surgical wound.  All of these deprivations, Rix alleges, were the result of the deliberate indifference of SCHC personnel to his serious medical conditions and treatment needs.

Because Rix has alleged a serious condition, a known need for treatment, and treatment that was inadequate to meet those needs, he has sufficiently alleged that he was denied medical care to which he is constitutionally entitled in the form of a medical diet, correctly administered insulin, foot care, and cyst treatment to state a claim upon which relief might be granted. However, Rix has failed to name any defendant to this claim. Accordingly, in an Order issued simultaneously with this Report

14

and Recommendation, I direct Rix to amend his complaint to state, with specificity, who was responsible for denying him the medical care to which he was entitled in each of these four instances. Rix must name specific individuals and state with particularity what each named defendant did to violate his constitutional right to adequate medical care.  If Rix is not in possession of the names of medical care providers at the SCHC, he is entitled to receive a copy of his medical records, which should contain the names of the medical personnel at the SCHC responsible for his care and treatment.

<u>Conclusion</u>

For the reasons stated herein, I recommend that the due process claims and all of the named defendants be dismissed from this action.  In an Order issued simultaneously with this Report and Recommendation, I direct Rix to amend his complaint in order to name defendants to his inadequate medical care claims.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of</u>

Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United

States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:     February 21, 2006

cc:       Michael D. Rix, *pro se*